IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**


Civil Action No. 17-cv-02261-PAB-SKC

DEREK THIESS,

        Plaintiff,

v.

CITY OF WHEAT RIDGE, COLORADO, a home rule municipality; and
KENNETH JOHNSTONE, in his individual capacity,

        Defendants.

---

**ORDER**

---

        This matter is before the Court on Defendants' Rule 12(b)(1) and (6) Motion to

Dismiss Second Amended Complaint (#83) [Docket No. 85] filed on August 31, 2018.

Plaintiff did not file a response.

## I.  BACKGROUND[1]

        Plaintiff Derek Thiess is a general contractor who remodels and rehabilitates

homes for a living.  Docket No. 83 at 5, ¶ 12.  At all times relevant to this lawsuit, he

owned The Mystinfield Group, LLC and was a manager of Colleton Holdings, LLC

("Colleton").  *Id.*, ¶ 12-13.

        On September 27, 2011, Colleton purchased a home located in Wheat Ridge,

---

[1]The facts stated below are taken from plaintiff's second amended complaint,
Docket No. 83, and are presumed to be true for the purposes of reviewing defendants'
motion to dismiss under Rule 12(b)(1) and 12(b)(6).

Colorado ("the property"). *Id.*, ¶ 14. Colleton hired plaintiff and Mystinfield to remodel the home on the property. *Id.* at 6, ¶ 15. Tensions soon arose between plaintiff and the Wheat Ridge Building Department, managed by defendant Johnstone, which persisted for several years. *Id.*, ¶ 17. Plaintiff alleges that defendants imposed "unreasonable requirements" on him and his building project. *Id.* For example, when plaintiff filed a set of revised building plans, the Building Department rejected the plans because they were printed on colored paper, even though the Building Department had no requirement that the plans be printed on white paper. *Id.* at 9, ¶ 23. Moreover, when plaintiff attempted to renew a building permit in 2015, he was turned away because his plans were not stamped. *Id.* at 16, ¶ 58.

Plaintiff describes the years since he purchased the property as a "systematic, targeted, and selective enforcement [of administrative procedures] against" him. *Id.* at 10, ¶ 33. He alleges that, in early 2015, defendant Wheat Ridge "began to step up its efforts to target [plaintiff] for harassment." *Id.* at 14, ¶ 49. On February 5, 2015, John Schumacher, the city's Chief Building Officer ("CBO"), issued a criminal citation to plaintiff for alleged code violations. *Id.* at 14-15, ¶ 52. This occurred after defendant Johnstone contacted Schumacher to discuss the property. *Id.* at 14, ¶ 50. According to the city clerk, this was the first time in the Building Department's documented history that it had issued a criminal citation. *Id.* at 15, ¶ 54.[2]

On June 10, 2015, "during the criminal proceedings, [plaintiff] made requests for discovery" under the Colorado municipal court rules. *Id.* at 22, ¶ 90. Plaintiff also

---

[2]Schumacher thereafter resigned as CBO and Johnstone eventually took over as interim CBO. *Id.*, ¶ 55.

issued "a set of subpoena duces [tecum]" upon city council members "seeking documents that he believed to exist." *Id.*, ¶ 91. Throughout the plea bargaining process with the city attorney, plaintiff was continuously threatened with the imposition of "maximum jail sentences" on all charges. *Id.* at 23, ¶ 93.

On June 16, 2015, plaintiff was issued a second criminal citation for working on the property without a permit on a day that plaintiff claims that he was not even in the city. *Id.* Both criminal citations against plaintiff were dismissed on September 23, 2015. *Id.*, ¶ 95.

Meanwhile, in June 2015, defendants issued a Notice and Order to Colleton Holdings, "the property owner of record," regarding the property. *Id.* at 18, ¶ 68-70; Docket No. 85-1 at 1. Defendant Wheat Ridge issued the citation, which was signed by defendant Johnstone. Docket No. 85-1 at 1-3. Plaintiff appealed the Notice and Order, Docket No. 85-1. Docket No. 83 at 18, ¶ 71. The Wheat Ridge Municipal Court held a hearing on the matter, and the municipal judge dismissed the proceedings. *Id.* at 19, ¶ 72.

In August 2015, plaintiff initiated an investigation into whether city officials had turned over all of the material that they should have disclosed under his discovery requests in the criminal proceedings. *Id.* at 22-23, ¶ 92. Plaintiff made several open records requests and discovered what he believed were many wrongfully withheld documents. *Id.*, ¶ 92. In November 2015, plaintiff "significantly increased" his open records requests, seeking documents related to defendant Johnstone. *Id.* at 24, ¶ 97. Plaintiff alleges that, at this point, defendants "escalate[d] the retaliation" for the

exercise of plaintiff's first amendment rights. *Id.* at 25, ¶ 98.

Plaintiff also alleges that his employees were harassed while working on the property. *Id.* at 14, ¶ 48. For example, through June and July 2015, officers "were patrolling, watching, and questioning persons" at the property "on a nearly daily basis," *id.* at 20, ¶ 77, plaintiff's employees were cited for working without a permit, *id.*, ¶ 80, and the police interrogated plaintiff's employees "on more than one occasion." *Id.* at 21, ¶ 85. One police officer informed plaintiff that "this [was not] a police matter" and that her orders were coming from the "top down." *Id.*, ¶ 86.

Plaintiff put the property on the market in August 2015. *Id.* at 25-26, ¶¶ 99-100. Plaintiff was forced to continually lower the asking price due to his ongoing issues with the city rendering potential purchasers apprehensive to buy. *Id.* at 26, ¶ 101. On October 20, 2015, defendant Wheat Ridge issued another Notice and Order, Docket No. 85-2, deeming the property a "dangerous building," which was signed by defendant Johnstone. *Id.* at 26-27, ¶ 102; Docket No. 85-2 at 5. Plaintiff claims that, after this Notice and Order, he lost the ability to borrow from his funding source and was forced to sell the property.[3] Docket No. 83 at 27, ¶ 105.

On January 20, 2016, an administrative hearing was held on plaintiff's appeal of the October 20 Notice and Order, and a "Consent Order" was entered by agreement of the parties. *Id.* at 27, ¶ 106. The Consent Order lists Mystinfield, Colleton, and Yagouaroundi Acquisitions, LLC as interested parties. Docket No. 85-6 at 1. Plaintiff

---

[3]Plaintiff's timeline is unclear, as he states that the October Notice and Order "essentially requir[ed] [plaintiff] to sell the [p]roperty," *id.* at 27, ¶ 105, but also states that he listed the property for sale in August 2015. *Id.* at 26, ¶ 100.

entered into this agreement "so he could sell the property." Docket No. 83 at 28, ¶ 106. On April 7, 2016, plaintiff sold the property. *Id.*, ¶ 111. This sale resulted in a loss of profits to plaintiff, "in part because his compensation and reimbursement for work done on the job relied on the anticipated profits that were lost due to the conduct of" defendants. *Id.* Plaintiff, as manager of Mystinfield, filed a lien on the property for his uncompensated work as general contractor. *Id.* In February 2017, the property sold to another owner. *Id.* at 29, ¶ 113. Plaintiff claims that "[t]he new owner and developer were treated very differently by [defendants] and were not subjected to the same building code requirements as [plaintiff]." *Id.*, ¶ 114.

Plaintiff sued defendants, bringing claims for (1) retaliation for protected first amendment activity under 42 U.S.C. § 1983; (2) deprivation of equal protection rights as a class of one under 42 U.S.C. § 1983; (3) a pattern or practice of denying equal protection under *Monell* against defendant Wheat Ridge; (4) a pattern or practice of retaliation for first amendment protected activity under *Monell* against defendant Wheat Ridge; (5) malicious prosecution under Colorado law; (6) abuse of process under Colorado law; and (7) intentional interference with contractual relations under Colorado law. *See* Docket No. 83 at 29-36. Plaintiff seeks compensatory and punitive damages, attorney's fees and costs, and any other relief that the Court deems just and equitable. *Id.* at 38.

## II. LEGAL STANDARD

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate if the Court lacks subject matter jurisdiction over claims for relief asserted in the

complaint.  Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)). "In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true." *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). Here, defendants' attack on plaintiff's complaint is a facial attack.  They do not raise additional or contradictory facts to dispute plaintiff's claims; rather, they argue that plaintiff's complaint is facially deficient in that it fails to establish that plaintiff has standing to assert his claims and fails to meet his pleading burden under *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  *See* Docket No. 85 at 2.

Defendants also argue that defendant Johnstone is shielded from liability as to plaintiff's first and second claims under the doctrine of qualified immunity.  Docket No. 85 at 4-10.  "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  Qualified immunity provides immunity from trial and the other burdens of litigation such as discovery, rather than merely a defense to liability.  *See Saucier v. Katz*, 533 U.S. 194, 200 (2001),

overruled on other grounds by *Pearson*, 555 U.S. 223. Therefore, a court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1277 (10th Cir. 2008). Under the first prong of the analysis, the plaintiff is required to "establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). Under the second prong, the plaintiff must show that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier*, 533 U.S. at 201.

Finally, to survive a motion to dismiss under Fed. R. Civ. P 12(b)(6), a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Twombly*, 550 U.S. at 570). "[W]here the well-pleaded facts do not

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. (internal quotation marks and alteration marks omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (alteration marks omitted).

Defendants attach several documents to their motion to dismiss. *See* Docket Nos. 85-1 to 85-7. Generally, if a court considers matters outside the pleadings in deciding a Rule 12(b)(6) motion, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P 12(d). However, "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997). Here, defendants have attached (1) two Notice and Orders, issued in June and October 2015, entered by defendants alleging the property is a "dangerous

building" under city code [Docket Nos. 85-1, 85-2]; (2) plaintiff's appeal of the October 2015 Notice and Order to the city's Board of Appeals [Docket No. 85-3]; (3) two letters sent from plaintiff to defendant Johnstone regarding the permit process [*id.*]; (4) a Notice to Abate Nuisance filed against the Mystinfield Group, LLC in February 2016 [Docket No. 85-4]; (5) a Withdrawal of Notice to Abate Nuisance issued in March 2016 [Docket No. 85-5]; (6) a Consent Order between defendants, Colleton Holdings, The Mystinfield Group, and Yagouaroundi Acquisitions, LLC regarding the June 2015 Notice and Order, entered into on February 3, 2016 [Docket No. 85-6]; and (7) a police report from an incident in which police were called to the property on suspicion that someone was illegally living there [Docket No. 85-7]. With the exception of the letters [Docket No. 85-3] and the Withdrawal of the Notice to Abate Nuisance [Docket No. 85-5], the Court finds that these documents are referenced in and central to plaintiff's complaint. Thus, the Court considers the remaining exhibits in deciding this motion.

## III. ANALYSIS

Defendants argue that plaintiff's claims should be dismissed in their entirety for a number of reasons. Specifically, they argue that (1) plaintiff lacks standing to assert his claims; (2) qualified immunity shields defendant Johnstone from liability; and (3) plaintiff failed to state a viable *Monell* claim. *See* Docket No. 85 at 2-14. Defendants also argue that, if the Court dismisses plaintiff's federal claims, it should not exercise supplemental jurisdiction over plaintiff's state claims. *Id.* at 14.

### A. Prudential Standing

"The standing inquiry ensures that a plaintiff has a sufficient personal stake in a

dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004).

To establish Article III standing, plaintiff must meet three elements:

> First, the plaintiff must have suffered an "injury in fact" – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be "fairly ... trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court." Third, it must be "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations omitted). "It is a long-settled principle that standing cannot be 'inferred argumentatively from averments in the pleadings, but rather 'must affirmatively appear in the record.'" *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990) (citations omitted). Defendants make no argument that plaintiff fails to satisfy the requirements of Article III standing.

However, "[t]he standing inquiry requires [the Court] to consider 'both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise.'" *Sac and Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). The doctrine of prudential standing encompasses "at least three broad principles: the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l, Inc. v. State Control Components, Inc.*, 572 U.S.

118, 126 (2014).

Related to the first requirement "is the so-called shareholder standing rule." *Franchise Tax Bd. of Cal. v. Alcan Aluminium Ltd.*, 493 U.S. 331, 336 (1990). "[T]he rule is a longstanding equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation unless the corporation's management has refused to pursue the same action for reasons other than good-faith business judgment." *Id.* "There is, however, an exception to this rule where the actions of the third party that injure the corporation also cause injury to the shareholder which is unique to himself or herself as a shareholder of the corporation and not suffered by the other shareholders." *Guides, Ltd., v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1072 (10th Cir. 2002). This rule allows "a shareholder with a direct, personal interest in a cause of action to bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd. of California*, 493 U.S. at 336. To show that he or she has a direct, personal interest in a cause of action, the plaintiff must demonstrate "some way in which his or her [injury is] not derivative of the corporation's [injury]." *Niemi v. Lasshofer*, 728 F.3d 1252, 1260 (10th Cir. 2013).

Plaintiff alleges that, as a result of defendants' conduct, his First Amendment and due process rights were violated. Docket No. 83 at 29-30, ¶¶ 117-18; *id.* at 30-31, ¶¶ 122, 127. But "[p]rudential standing imposes different demands than injury in fact." *The Wilderness Soc. v. Kane County, Utah*, 632 F.3d 1162, 1171 (10th Cir. 2011). "A party may suffer a cognizable injury but still not possess a right to relief." *Id.* The relevant inquiry before the Court is whether plaintiff has prudential standing to raise

claims for an alleged violation of his constitutional rights under the personal-interest exception to the shareholder standing rule.

The Tenth Circuit has not ruled whether a plaintiff has prudential standing to bring a lawsuit challenging conduct that is directed at a corporation, but which seeks to remedy alleged violations of the shareholder's personal constitutional rights. However, other Tenth Circuit cases addressing shareholder standing provide guidance.

In *Guides*, the Tenth Circuit looked to the source of the alleged harm suffered by the shareholder plaintiff to determine whether she had standing. 295 F.3d at 1072-73. In that case, the plaintiff brought claims under 42 U.S.C. §§ 1981 and 1982 alleging unlawful interference with the right to contract and the right to lease property. *Id.* at 1071. The plaintiff alleged that she had been discriminated against based on her race and had standing to sue because she had personally suffered emotional damages as a result of the discrimination. *Id.* at 1072. The Tenth Circuit disagreed. *Id.* at 1073. It determined that the plaintiff's alleged injury of emotional distress "arose from the failure of the defendants to contract with or lease to [the corporation] and was a product of the economic damages which were suffered by the corporation." *Id.* at 1072-73. It held that the plaintiff's claim was entirely derivative of the corporation and, thus, she had no standing to sue. *Id.* Accordingly, *Guides* stands for the proposition that an injury to an individual shareholder that solely results from an injury to the corporation is insufficient to confer prudential standing on that shareholder.[4] *See also Bixler v. Foster*, 596 F.3d

_____

[4]Notably, however, *Guides* addressed the shareholder's ability to bring claims arising under 42 U.S.C. §§ 1981 and 1982. *Id.* at 1071. The rights which plaintiff sought to vindicate clearly belonged to the corporation as the contracting party. *See id.* at 1072 ("It has been held that prudential limitations on standing ordinarily require that

12

751, 756 (10th Cir. 2010) ("In general, the law is that conduct which harms a corporation confers standing on the corporation, not its shareholders.").

In contrast, in *Grubbs v. Bailes*, 445 F.3d 1275 (10th Cir. 2006), the Tenth Circuit indicated that a plaintiff who had a distinct, legally recognized interest in a piece of property had standing to sue the city on an equal protection basis for failing to enforce trespass laws with respect to that property.[5] *Id.* at 1280. In *Grubbs*, a corporation owned lakeside property and leased to each shareholder lots for his or her exclusive use. *Id.* at 1277. All shareholders had joint use of the remaining common areas. *Id.* One common area in particular apparently experienced many trespassers, and one shareholder sued the local sheriff for failure to enforce the applicable trespass laws. *Id.* at 1279. The Tenth Circuit stated that, "[i]f plaintiff's only connection with the property had been his ownership of [the corporation's] stock, so that any injury to him was solely a function of injury to the corporation's property holding, such a purely derivative interest would fall within the scope of the prudential prohibition on shareholder standing." *Id.* at 1280. "Plaintiff, however, has a distinct legally recognized interest in the property," and, to the Tenth Circuit, it "appear[ed] that plaintiff ha[d] asserted a

---

an action under sections 1981 or 1982 be brought by the direct victims of the alleged discrimination because they are best situated to assert the individual rights in question.") (quotation and alteration marks omitted). Plaintiff here seeks to assert constitutional injuries that are personal to him. Thus, although *Guides* provides insight into the Tenth Circuit's approach to shareholder standing, its applicability here is limited.

[5]The Tenth Circuit analyzed the issue and stated that it "appears that plaintiff has asserted a direct injury sufficient to satisfy . . . prudential standing" requirements. *Id.* at 1280. The court, however, declined to "definitively resolve the matter," because "[q]uestions relating to prudential standing . . . may be pretermitted in favor of a straightforward disposition on the merits." *Id.* at 1281.

direct injury sufficient to satisfy" prudential standing requirements. *Id.* Unlike *Guides*, the plaintiff did not merely seek to remedy an injury suffered as a result of harm to a corporation; rather, the defendant's actions directly harmed the *Grubbs* plaintiff's distinct property interests that were separate from the corporation's property interest, and thus, he had standing to sue.

Under these cases, the personal-injury exception to the shareholder standing rule applies when the shareholder is directly harmed by third party conduct, but will not apply if the shareholder's injury is only a consequence of injuries to the corporation. *See also Pagan v. Calderon*, 448 F.3d 16, 30 (1st Cir. 2006) ("[T]he fact that animus toward the agent sparked mistreatment of the principal does not create an exception to the rule that an agent's section 1983 claim can flourish only if he alleges that he personally suffered a direct, nonderivative injury."); *Duran v. City of Corpus Christi*, 240 F. App'x 639, 642-43 (5th Cir. 2007) (unpublished) (adopting First Circuit's reasoning in *Pagan* to find that plaintiff had no prudential standing to bring First Amendment retaliation claim against city despite city's alleged animus toward plaintiff because defendant's motive was not relevant to inquiry into whether plaintiff asserted personal injury); *Potthoff v. Morin*, 245 F.3d 710, 717 (8th Cir. 2001) ("We hold that the shareholder standing rule applies to civil rights actions brought pursuant to 42 U.S.C. § 1983 by shareholders claiming injury to their corporations . . . [the plaintiff's] § 1983 claim can survive only if he has alleged that he personally has suffered a direct, nonderivative injury"); *but see Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1318-19 (9th Cir. 1989) (deciding that "the plaintiffs' argument that the defendants' actions were taken in retaliation for [plaintiff's] exercise of first amendment rights clearly allege

14

a direct and independent personal wrong.  The first amendment rights that were allegedly violated belong to [the plaintiff], not the corporation.").

The Court finds that, under the Tenth Circuit's current application of the personal-injury exception to the shareholder standing rule, plaintiff's injury must be distinct and personal and cannot arise solely due to an injury to the corporation, regardless of defendants' alleged retaliatory animus.  Here, plaintiff alleges that he suffered "an injury that would chill a person of ordinary firmness from continuing to engage in [First Amendment] protected activity,"[6]  Docket No. 83 at 30, ¶ 118, and that he was treated "differently and less favorably than other similarly situated," in violation of his equal protection rights.  *Id.*, ¶ 122.  Plaintiff provides the following as examples of injuries leading to the deprivation of his constitutional rights: (1) criminal prosecution based on groundless code violation tickets; (2) severe delays in permitting; (3) imposition of unreasonable conditions required to maintain a building permit; (4) harassment of plaintiff's employees on the work site by police officers; (5) wrongful liens placed upon the property; (6) unannounced inspections done on the property; (7) intimidation by police officers at City Council meetings and court dates; and (8) lost profits on the sale of the property.  *Id.* at 7, ¶ 18.

The Court agrees with defendants that the majority of these alleged injuries are derivative from conduct directed at the companies and from harm suffered by the companies and thus cannot be the basis to confer prudential standing upon plaintiff. Specifically, the allegations that defendants were slow in issuing permits, imposed

---

[6]Plaintiff does not alleged any facts indicating that he was deterred from speaking as a result of defendants' conduct.

unreasonable conditions for permits, posted unnecessary liens on the property, inspected the property without plaintiff's consent, and caused lost profits are all allegations regarding harm suffered by the companies themselves. The property was owned by Colleton Holdings, not plaintiff personally. Docket No. 83 at 6, ¶ 16. And throughout all of plaintiff's interactions with defendants, defendants' actions were directed at plaintiff's companies. The Notice and Orders issued by defendants were issued to Colleton Holdings, LLC, Docket No. 85-1 at 1, and The Mystinfield Group, LLC, "the property owner[s] of record." Docket No. 85-2 at 1. Plaintiff even classifies these notices as "targeted enforcement and harassment *at the property.*" Docket No. 83 at 18, ¶¶ 67-68. Moreover, the Notice to Abate Nuisance was issued to "The Mystinfield Group, LLC, Attn: Derek Thiess," Docket No. 85-4 at 1.

Plaintiff primarily dealt with defendants in his capacity as a manager and owner of Colleton and Mystinfield, respectively, not in his personal capacity. When he appealed defendants' October 2015 Notice and Order, he did so "having authority as the manager of Colleton Holdings, LLC, a Colorado Limited Liability Company and The Mystinfield Group, LLC, the subjects of The Notice and Order 2015-4." Docket No. 85-3 at 1. Further, the parties' Consent Order, which addressed the appeal of the October 2015 Notice and Order, listed the interested parties to the action, which included Colleton Holdings and the Mystinfield Group. Docket No. 85-6 at 1. It did not list or include plaintiff. *Id.* Thus, defendants' actions were directed at Colleton or Mystinfield, not plaintiff, and the injuries set out above allegedly resulting from those actions, such as permitting delays or lost profits, were suffered by the companies, not plaintiff. *See Bartel v. Kemmerer City*, 482 F. App'x 323, 326 (10th Cir. 2012) (unpublished) (finding

16

no personal injury to shareholders resulting from city's failure to repay company's bid bond where  shareholders acted only in their capacities as corporate officers of company); *cf. Bixler*, 596 F.3d at 757 (diminution of value of company stock is not a direct and personal injury "but is, rather, an injury to the corporation").  Further, any injury allegedly suffered by plaintiff's employees as a result of defendants' purported harassment of those employees is insufficient to confer standing upon plaintiff, as he has alleged no injury resulting from that conduct.  A claim under § 1983 must "be based upon the violation of plaintiff's personal rights, and not the rights of someone else." *Archuleta v. McShan*, 897 F.2d 495, 497 (10th Cir. 1990).

Thus, alleged injuries (2) through (8) are entirely derivative of injuries to the companies and cannot confer prudential standing upon plaintiff to assert his personal constitutional rights.[7]  To hold otherwise would be to permit a plaintiff to bring an individual claim based on conduct directed to and injuring only his or her company by simply pleading that the conduct would chill the speech of a person of ordinary firmness.[8]

However, plaintiff also alleges that he suffered an injury when he was twice criminally cited for engaging in protected First Amendment activity.  Docket No. 83 at

---

[7]To the extent that plaintiff alleges he suffered an injury due to defendants' purported intimidation of plaintiff at City Council meetings and at court dates, plaintiff alleges no facts setting forth this alleged intimidation.  Accordingly, such allegations do not meet the pleading standard under *Iqbal*.  *See* 556 U.S. at 678 (a complaint is insufficient "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'") (quoting *Twombly*, 550 U.S. at 557).

[8]Plaintiff did not allege that any of the above actions taken by defendants caused an actual chill to plaintiff's exercise of his first amendment rights.

33, ¶ 131-32.  Plaintiff alleges that he was "forc[ed] . . . to go through the humiliation and anxiety of criminal proceedings, where the possibility of the imposition of a jail sentence was highlighted by the prosecutor."  *Id.* at 22, ¶ 88.  Plaintiff states that the defendants' actions were "intended to chill [his] continued exercise of his protected First Amendment right to petition the government for redress of grievances."  *Id.* at 7, ¶ 18. He also argues that "[defendants] deprived [him] of equal protection by administering . . . criminal prosecutions in a discriminatory manner against [him] as a class of one."  *Id.* at 8, ¶ 19.  Construing these allegations in the light most favorable to plaintiff, *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007), the Court finds that plaintiff's allegations of injury are sufficiently personal to confer prudential standing.  *See Winsness v. Yocom*, 433 F.3d 727, 734 (10th Cir. 2006) ("Even short-lived criminal prosecutions can cause concrete injuries.").  To the extent that plaintiff alleges an injury from the two criminal citations issued against him personally, he has prudential standing to move forward with his claims.

### B.  Qualified Immunity

Defendants also argue that plaintiff's claims against defendant Johnstone must be dismissed under the doctrine of qualified immunity.  Docket No. 85 at 4.  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).

### 1. First Amendment

The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights*, 509 F.3d 1278, 1282-83 (10th Cir. 2007). A prima facie case of first amendment retaliation under § 1983 requires a showing (1) "that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (internal quotations omitted).

Even assuming, without deciding, that plaintiff could satisfy the first two elements of this claim, plaintiff's argument clearly fails as to the third element. Plaintiff has not pled facts demonstrating that the criminal citations – the only injury sufficient to confer standing upon plaintiff – were issued in retaliation for any protected activity. The first criminal citation was issued against plaintiff on February 5, 2015. Docket No. 83 at 14, ¶ 52. Plaintiff makes no allegation in his complaint that he engaged in protected First Amendment activity before this date. The second criminal citation was issued on June 16, 2015. *Id.* at 23, ¶ 93. Although plaintiff alleges that, on June 10, 2015, he "made requests for discovery" "during the criminal proceedings," *id.* at 22, ¶ 90, he does not allege (1) that this was protected activity or (2) that this was the animus for the city initiating the second criminal citation. In fact, plaintiff alleges that the criminal prosecutions were "instituted with the ulterior motive of reinforcing arbitrary and

capricious building requirements" and to "driv[e] [plaintiff] to abandon the property." Docket No. 83 at 24, ¶ 96. He does not allege that the second citation was issued to retaliate against the filing of his discovery requests. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Lopez v. Prince*, No. 11-cv-02352-CMA-BNB, 2012 WL 3277178, at *2 (D. Colo. Aug. 9, 2012) (quoting *Twombly*, 550 U.S. at 557).

Instead, plaintiff pleads that the alleged retaliation stems from his investigation of defendant Johnstone. Docket No. 83 at 25, ¶ 98 (alleging that defendants' retaliation was motivated by plaintiff's "exercise of his First Amendment right to petition by investigating and challenging Johnstone for the failure to turn over documents during the criminal case and other potentially corrupt matters that [plaintiff] learned about during the process."). But this "investigation" did not begin until at least August 2015, *id.* at 22-23, ¶ 92, and continued through November and December 2015, *id.* at 24-25, ¶ 97, well after the criminal citations had been issued against plaintiff. Because plaintiff's injury occurred before the actions that allegedly triggered the retaliation, plaintiff has failed to establish that defendant Johnstone violated a federal constitutional right. For this reason, defendant Johnstone is entitled to qualified immunity on plaintiff's § 1983 retaliation claim, and this claim is dismissed as to defendant Johnstone under Rule 12(b)(6).

### 2. *Equal Protection*

Next, plaintiff asserts an equal protection, class-of-one claim in which he alleges that he was treated "differently and less favorably than others similarly situated" with

respect to the permit application process.  Docket No. 83 at 30, ¶ 122.  "To prevail on this theory, a plaintiff must first establish that others[] 'similarly situated in every material respect' were treated differently."  *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011).  "A plaintiff must then show this difference in treatment was without rational basis, that is, the government action was irrational and abusive and wholly unrelated to any legitimate state activity."  *Id.* (quoting *Mimics, Inc. v. Vill. of Angel Fire*, 394 F.3d 836, 849 (10th Cir. 2005)).

Courts should proceed with caution when addressing class-of-one claims.  *Id.*  "It is always possible for persons aggrieved by government action to allege, and almost always possible to produce evidence, that they were treated differently from others, with regard to everything from zoning to licensing to speeding to tax evaluation."  *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004).  These concerns are particularly pertinent with regard to "challenges to low-level government decision-making, which often involves a great deal of discretion.  The latitude afforded police officers, IRS agents, university administrators, zoning officials, and other, similar government actors necessarily results in a sizeable amount of random variation in outcome."  *Kansas Penn Gaming*, 656 F.3d at 1216.  "If even innocuous inconsistencies gave rise to equal protection litigation, government action would be paralyzed."  *Id.* at 1216-17.

The Court finds that plaintiff has failed to plead that "others similarly situated in every material respect were treated differently."  Plaintiff alleges that "there are documents reflecting several permit applications that were similarly situated with [plaintiff], but the applicants were treated differently, receiving approvals and certainly

21

not harassed and otherwise mistreated."  Docket No. 83 at 30, ¶ 122.  Plaintiff,

however, does not identify the applications or the applicants.  The Court finds this

allegation insufficient.  *See Kansas Penn Gaming*, 656 F.3d at 1220 ("[A]fter *Twombly*

and *Iqbal*, it is insufficient to simply allege that, other, unidentified properties have

'comparable' or 'similar' conditions – the claim must be supported by specific facts

plausibly suggesting the conditions on the properties and the properties themselves are

similar in all material respects."); *see also Glover v. Mabry*, 384 F. App'x 763, 778 (10th

Cir. 2010) (unpublished) ("[Plaintiff] has failed to allege, as it must, the identity or

characteristics of other similarly situated contractors and how those similarly situated

contractors were treated differently.").  A complaint will not suffice "if it tenders 'naked

assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 557).  Similar to *Kansas Penn Gaming*, plaintiff has not

specifically identified any similarly situated individuals or described in detail how the

other individuals were treated differently.  Therefore, plaintiff has failed to adequately

set out the elements of his § 1983 equal protection claim, and plaintiff's claim will be

dismissed as to defendant Johnstone on qualified immunity grounds.

### C.   Claims Against Wheat Ridge

Having found that plaintiff has failed to sufficiently plead the requisite elements of

his First Amendment retaliation and equal protection, class-of-one claims, the Court

finds that plaintiff has failed to allege sufficient facts to state a plausible First

Amendment retaliation claim or equal protection claim against Wheat Ridge.  *See*

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007) (to state a first

amendment retaliation claim, plaintiff must prove, among other things, "that the

22

defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct"); *see also Collins*, 656 F.3d at 1216 (essential element of equal protection class-of-one claim is showing that the plaintiff was treated differently from others similarly situated).

"[A] complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286. "[I]f the complaint is sufficiently devoid of facts necessary to establish liability . . . a court must conclude that plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). Plaintiff has failed to allege facts with respect to all material elements of his claims and, as a result, has not met the plausibility requirement set out in *Twombly*. As a result, the Court will also dismiss plaintiff's first and second claims as to defendant Wheat Ridge.

### D. Municipal Liability

Defendants argue that plaintiff filed to state a viable claim under *Monell v. Dep't of Social Serv. of New York*, 436 U.S. 658 (1978).[9] Docket No. 85 at 12. The Court agrees. A "*Monell* claim is not a separate, stand-alone claim." *Romero v. Bd. of Cty. Comm'rs for the Cty. of Curry*, 202 F. Supp. 3d 1223, 1267 (D.N.M. 2016). Rather, it "extends liability to a municipal organization where that organization's failure to train, or

_____

[9]Defendants argue that "[plaintiff] failed to state any viable *Monell* claim in his Fifth Claim for Relief." Docket No. 85 at 12. Plaintiff's fifth claim is a malicious prosecution claim under Colorado state law. Docket No. 83 at 34-35. The Court construes defendants' argument as challenging plaintiff's third and fourth claims for relief, which raise *Monell* claims. *See id. at* 31-34.

the policies or customs that is has sanctioned, led to an independent constitutional violation." *Id.* Because the Court determined in its qualified immunity analysis that plaintiff has failed to sufficiently allege any First Amendment or equal protection violation, his municipal liability claims necessarily fail. *See id.* (finding that plaintiff's *Monell* liability claim would fail if she could not "prove a constitutional violation in her other counts"); *see also Sigg v. Allen Cty., Kan., Bd. of Cty. Comm'rs*, 712 F. App'x 738, 740-41 (10th Cir. 2017) (finding that the defendant could not be liable under Monell "[a]bsent an underlying constitutional violation"). For this reason, plaintiff's *Monell* claims are also dismissed.

### E. Supplemental Jurisdiction

Defendants argue that the Court should not exercise supplemental jurisdiction over plaintiff's state claims because, under 28 U.S.C. § 1367, a district court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . [it] has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); Docket No. 85 at 14. The Tenth Circuit has instructed that, "if federal claims are dismissed before trial, leaving only issues of state law," courts should "decline to exercise pendent jurisdiction . . . absent compelling reasons to the contrary." *Brooks v. Gaenzle*, 614 F.3d 1213, 1229-30 (10th Cir. 2010) (brackets, internal citations, and internal quotation marks omitted). This rule is consistent with "[n]otions of comity and federalism," which "demand that a state court try its own lawsuits." *Id.* at 1230 (quoting *Ball v. Renner*, 54 F.3d 664, 669 (10th Cir. 1995)).

Given the fact that plaintiff has not responded to defendants' motion to dismiss and has set forth no argument that the Court should retain jurisdiction over his state law

claims, the Court will dismiss plaintiff's fifth, sixth, and seventh claims for relief without prejudice. *See Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (unpublished) (holding that, when declining to exercise supplemental jurisdiction over state-law claims, court "had discretion either to remand the claims to the state court or to dismiss them"); *see also* Colo. Rev. Stat. § 13-80-111 (permitting claims properly commenced within the statute of limitations to be re-filed if involuntarily dismissed because of lack of jurisdiction); *Artis v. District of Columbia*, 138 S. Ct. 594, 598 (2018) (holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims asserted under § 1367(a) during the pendency of the federal litigation in which such claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

## IV.  CONCLUSION

For these reasons, it is

**ORDERED** that Defendants' Rule 12(b)(1) and (6) Motion to Dismiss Second Amended Complaint (#83) [Docket No. 85] is **GRANTED IN PART** and **DENIED IN PART**.  It is further

**ORDERED** that plaintiff's first, second, third, and fourth claims are dismissed with prejudice.  It is further

**ORDERED** that plaintiff's fifth, sixth, and seventh claims are dismissed without prejudice.  It is further

**ORDERED** that, within 14 days of the entry of this order, defendants may have their costs by filing a Bill of Costs with the Clerk of the Court.  It is further

**ORDERED** that this case is closed.

DATED September 19, 2019.

BY THE COURT:

s/Philip A. Brimmer

PHILIP A. BRIMMER
Chief United States District Judge